Joshua B. Swigart (SBN 225557)
josh@southwestlitigation.com
David J. McGlothlin, Esq. (SBN 253265)
david@southwestlitigation.com
Hyde & Swigart
2221 Camino Del Rio S., #101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile:  (619) 297-1022

Abbas Kazerouian (SBN 249203)
ak@kazlg.com
Ryan L. McBride, Esq. (SBN 297557)
ryan@kazlg.com
Kazerouni Law Group, APC
245 Fischer Ave., Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile:  (800) 520-5523

Ross Schmierer (*Pro Hac Vice*)
Rschmierer@denittislaw.com
Denittis Osefchen Prince P.C
Five Greentree Centre
525 Route 73 North, Suite 410
Marlton, NJ 08053
Telephone: (856) 797-9951
Facsimile: (856) 797-9978

Attorneys for Plaintiffs

# United States District Court

# Central District of California, Southern Division

| | |
|---|---|
| Retina Associates Medical Group, Inc. and Acutecare Health System, LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>The Olson Research Group, Inc.,<br><br>Defendant. | Case No.: 8:18-cv-01997-DOC-KES<br><br>**[Class Action]**<br><br>**Plaintiffs' Response to Defendant's Motion to Dismiss Pursuant to Rule 12(b)(6) or Stay, Transfer, or Dismiss Pursuant to the First-Filed Doctrine**<br><br>**Date: March 18, 2019**<br>**Time: 8:30am**<br>**Courtroom: D9** |

## Table of Contents

I. INTRODUCTION………………………………………………………1
II. STATEMENT OF RELEVANT MATERIAL FACTS……………………..2
III. STANDARD OF REVIEW……………………………………………4
IV. ARGUMENT……………………………………………………………5
    A. The TCPA Prohibits Unsolicited Faxes Proposing to Enter into
    Commercial Relationships………………………………………7
    B. Plaintiffs Need Discovery To Completely Respond to Defendant's
    Argument Regarding Pretext for a Large Advertising Scheme……10
    C. Defendant's Faxes were an "advertisement" within the Meaning of
    the TCPA because They Solicited Plaintiffs' Compliance in
    Furtherance of Commercial Profits for Defendant…………………14
    D. Defendant's Faxes Were Designed To Generate Website Traffic as
    Part of an Overall Marketing Plan…………………………………..15
    E. The Court Should not Dismiss, Stay, or Transfer the Case………..16
        i. The Court Has Discretion not To Follow the
        First-to-File Rule…………………………………………16
        ii. A Stay Will Cause a Significant hardship and Significant
        Prejudice to Plaintiffs……………………………………..18
V. IF THE COURT FINDS THE FACTS WERE NOT SUFFICIENTLY
PLED, PLAINTIFFS SHOULD BE GIVEN THE OPPORTUNITY TO
AMEND THE COMPLAINT………………………………………………..21
VI. CONCLUSION………………………………………………………22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Table of Authorities

## Cases

*Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)   4

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)   4

*Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)   4

*Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996)   5

*Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009)   4-5

*Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998)   5

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009)   5

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)   5

*Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003)   5

*Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996))   5

*Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)   5

*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003)   5

*Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 466 (4th Cir. 2018)   6

*Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. CIV. A. 12-2132, 2013 U.S. Dist. LEXIS 15952, 2013 WL 486207, at **4-6 (D.N.J. Feb. 6, 2013)   6

*Lyngaas v. J. Reckner Assocs., Inc.*, No. 2:17-CV-12867-TGB, 2018 WL 3634309, at *3 (E.D. Mich. July 31, 2018)   7, 8, 18

*Sandusky Wellness Ctr. v. Medco Health Solutions, Inc.*, 788 F.3d   8

*Mauthe v. Optum, Inc.*, 2018 U.S. Dist. LEXIS 125796 (E.D.P.A, July 27, 2018)9, 18

*N.B. Industries, Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012) 9

*Supply Pro Sorbents, LLC v. RingCentral, Inc.*, 743 F. App'x 124, 124 (9th Cir. 2018)   10

*Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014)   16

*G.M. Sign, Inc. v. MFG.com, Inc.*, No. 08-C7106, 2009 WL 1137751, at *1 (N.D. Ill. Apr. 24, 2009) .......... 16

*Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) .......... 17

*Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982) .......... 17

*Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) .......... 17

*Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952) .......... 17

*Negrete v. Petsmart, Inc.*, 2013 U.S. Dist. LEXIS 129237, at **6-8 (E.D. Cal. Sept. 9, 2013) .......... 17

*Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000) .......... 17, 18

*CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962) .......... 18

*Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936) .......... 19, 21

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) .......... 19

*SEC v. Loomis*, No. 10-CV-0458-KJM, 2013 WL 4543939, at *2 (E.D. Cal. Aug. 27, 2013) .......... 19

*LG Elecs., Inc. v. Eastman Kodak Co.,* 09-cv-344, 2009 WL 1468703, at *3 (S.D. Cal. May 26, 2009) .......... 19

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D.Ill. 2014) .......... 20

*Richardson v. Verde Energy USA, Inc.,* 2016 U.S. Dist. LEXIS 113738, at *5 (E.D. Penn. Aug. 25, 2016) .......... 20

*Cook, Perkiss & Liehem Inc. v. N. Cal Collection Serv. Inc.,* 911 F.2d 242, 246-47 (9th Cir. 1990) .......... 21

*Reddy v. Litton Indus., Inc.,* 912 F. 2d 291, 296 (9th Cir. 1990) .......... 21

*Forman v. Davis*, 371 U.S. 178, 182 (1962) .......... 22

*In re Morris*, 363 F.3d 891, 894 (9th Cir. 2004) .......... 22

**Statutes**

47 U.S.C. § 227                                                                        1

Fed. R. Civ. P. 8(a)(2)                                                                4

Fed. R. Civ. P. 12(b)(6)                                                               4

Fed. R. Civ. P. 15(a)(2)                                                               5

**Other Authorities**

FCC Rules and Regulations Implementing the Telephone Consumer Protection Act

of 1991                                                                                6

Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973                             6

www.olsonresearchgroup.com                                                            11

**POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Defendant's motion is based off the incorrect assumption that only a facsimile that offers to *sell* a service or product can be an "advertisement" under the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").  The case law presented in the response of Plaintiffs Retina Associates Medical Group, Inc. ("Retina") and Acutecare Health System, LLC ("Acutecare") (or jointly as "Plaintiffs") here shows that an "advertisement" under the TCPA is a proposal to enter into a commercial relationship, whether that proposal is to sell *or buy* a service or product. Therefore, Defendant's offer to pay for Plaintiffs' services in exchange for Plaintiffs' completing a survey constitutes an advertisement pursuant to the TCPA.

Defendant's argument, that the facsimiles sent to Plaintiffs were not a pretext to a larger advertising scheme pursuant to the TCPA, is premature. Discovery is needed by Plaintiffs to determine if the facsimiles were a pretext to advertisements geared towards Plaintiffs or other third parties. However, in an abundance of caution, Plaintiffs have provided information from Defendant's website that would indicate the surveys were in fact a pretext for a commercial advertising campaign, which signifies that Defendant's facsimiles sent to Plaintiffs were advertisements pursuant to the TCPA.

Finally, Plaintiffs' case should not be dismissed, transferred, or stayed under

1

the first-filed doctrine because this would not be the most efficient course of action for this case and the Court has discretion to deny that request under the controlling case law. Should the Court feel that Plaintiffs' allegations are deficient, Plaintiffs request leave to amend their complaint.

## II.  STATEMENT OF RELEVANT MATERIAL FACTS

Defendant is a full-service marketing research firm, specializing in healthcare, consumer and agricultural research. *Def.'s Br. in Supp. of Mot. to Dismiss "MTD,"* pg. 4, l. 6-8 (ECF 17-1). On or about August 9, 2017, and October 3, 2017, Defendant used its telephone facsimile machine to send unsolicited advertisements to Retina's facsimile machine. *Plaintiffs' Complaint "Complaint,"* ¶ 11 (ECF 1). Defendant's August 9, 2017 and October 3, 2017 advertisements attempted to solicit Retina's representative to perform research work for Defendant in exchange for pay. *Id.* ¶ 13.  Specifically, the August 9, 2017 facsimile to Retina stated in part:

> 15-minute Survey on Ophthalmology Final Compensation Increase-Closing Today…As a token of appreciation of your time, we are offering a **fair market value compensation of $150.00.** *Defendant's Exhibit 2.*

The October 3, 2017 facsimile to Retina stated in part:

> …The survey is now available online, and should take approximately **25 minutes** for you to complete. For your time and opinions, we would like to present you with a

**fair market value compensation of $125.00** *Defendant's Exhibit 2.*

These August 9, 2017 and October 3, 2017 facsimile transmissions were advertising the commercial availability for paid work to Retina. *Complaint ¶ 14.* Prior to October 3, 2017, Retina did not have an established business relationship with Defendant. *Id. ¶ 15.* The facsimiles from Defendant's telephone facsimile machine to Retina's facsimile were unsolicited by Retina and without Retina's permission or consent. *Id. ¶ 20.*

On May 30, 2018, Defendant used its telephone facsimile machine to send an unsolicited advertisement to Acutecare's facsimile machine. *Id. ¶ 23.* That advertisement attempted to solicit Acutecare's representative to perform research work for Defendant in exchange for pay. *Id. ¶ 24.* The May 30 facsimile to Acutecare stated in part:

> $400- Decart (Drug-Drug Interaction Effectiveness and Clinical Awareness Randomized Controlled Trial) Online Study…Participants will receive a fair market value compensation of $400 for completing **both rounds** of this study. **Once you complete Round 1, you will receive $100 and the remaining balance of $300 after completion of Round 2.** *Defendant's Exhibit 1.*

This May 30 facsimile transmission was advertising the commercial availability for paid work to Acutecare. *Complaint ¶ 25.* The facsimiles from Defendant's telephone facsimile machine to Acutecare's facsimile were unsolicited

by Acutecare and without Acutecare's permission or consent. *Id.* ¶ 31.

## III.  STANDARD OF REVIEW

Under federal pleading standards, a complaint requires *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Under Rule 12(b)(6), a defendant may bring a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A court will not normally look beyond the four corners of the complaint in resolving a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). The court must construe the complaint in the light most favorable to the plaintiff and must accept all factual allegations as true. *Cahill v. Liberty Mutual Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).  In addition, the court must also accept as true all reasonable inferences to be drawn from the material allegations in the complaint. *See Barker v. Riverside County Office of Ed.*, 584 F.3d 821, 824 (9th Cir. 2009); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). Unlike factual allegations, conclusory statements are not entitled to a presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009); *see also*

*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Dismissal of a plaintiff's complaint without leave to amend is appropriate only when a court is satisfied that the deficiencies in the complaint could not possibly be cured by amendment. *Jackson v. Carey*, 353 F.3d 750, 758 (9th Cir. 2003) (citing *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996)); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).  Indeed, a dismissal for failure to comply with Rule 12(b)(6) "should ordinarily be without prejudice." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003).[1]  "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

In light of the above standards, Defendant's Motion should be denied in its entirety. Alternatively, Plaintiffs respectfully request leave to file a First Amended Complaint to cure any pleading deficiencies.

## IV.  ARGUMENT

The TCPA defines an "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods or services, which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). The FCC has interpreted this section of the TCPA and has taken a broad view of the meaning of "unsolicited advertisement." *See* FCC Rules and Regulations Implementing the

_____

[1] In the Ninth Circuit, the Rule 12(b)(6) motion "'is viewed with disfavor and is

Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 Fed. Reg. 25967, 25973; *see, e.g., Carlton & Harris Chiropractic, Inc. v. PDR Network, LLC*, 883 F.3d 459, 466 (4th Cir. 2018) (applying FCC interpretation to hold fax offering free e-book was an unsolicited advertisement).

Generally, there are two ways a fax can violate subsection 227(b)(1)(C) of the TCPA. First, a fax will violate the TCPA if, on its face, it promotes "the commercial availability or quality of any property, goods or services . . . ." 47 U.S.C. § 227(a)(5); *see Physicians Healthsource, Inc. v. Janssen Pharms., Inc.*, No. CIV. A. 12-2132, 2013 U.S. Dist. LEXIS 15952, 2013 WL 486207, at **4-6 (D.N.J. Feb. 6, 2013).

Second, even if a fax does not facially promote a good or service, it will nonetheless violate the TCPA if it is a pretext for a larger advertising scheme. *See, e.g.*, FCC Rules and Regulations, 71 Fed. Reg. at 25973 ("[S]urveys that serve as a pretext to an advertisement are subject to the TCPA's facsimile advertising rules."). As the FCC Rule notes, "'free' publications are often part of an overall marketing campaign to sell property, goods, or services. . . . [W]hile the publication itself may be offered at no cost to the [facsimile] recipient, the products promoted within the publication are often commercially available." *Id.* In other words, the FCC has determined that offers for free goods and services are so frequently "part of an overall marketing campaign to sell [something]," that the statute's purpose

will be achieved by preemptively banning all offers for free goods and services. *See Carlton*, 883 F.3d at 468. Notably, if this rule were not in place, a plaintiff would have to show that the offer for a free good or service was a pretext for a larger, "overall marketing campaign to sell [something]." FCC Rules and Regulations, 71 Fed. Reg. at 25973.

### A. The TCPA Prohibits Unsolicited Faxes Proposing to Enter into Commercial Relationships

A recent 2018 district court case in the Sixth Circuit ruled on this identical issue regarding the defendant soliciting the plaintiff to participate in a survey for pay and whether this constituted an "advertisement" pursuant to the TCPA. The Court found that "[i]n order to be an 'advertisement' under the TCPA, the fax on its face must propose that the sender and the recipient enter into some kind of commercial relationship, whether that be buying or selling a good or a service." *Lyngaas v. J. Reckner Assocs., Inc.*, No. 2:17-CV-12867-TGB, 2018 WL 3634309, at *3 (E.D. Mich. July 31, 2018). The Court further found "[t]hat is exactly what the fax in [that] case [did]." *Lyngaas* determined that the "[d]efendant [was] announcing its desire to hire Plaintiff to take its survey, in exchange for $30. **As a matter of law, that's an advertisement.**" *Id.* (Emphasis added.).

*Lyngaas* also fully analyzed the *Sandusky* ruling cited by Defendant in its motion. *Lyngaas* found that:

The fax in this case calls to the attention of the public the fact that the service of survey-takers is desired by the Defendant. The fax communicates that Defendant is seeking to employ survey-takers. In exchange for this "service," Defendant is willing to pay $30 to dentists for 20 minutes of their time. It is of no import that Defendant is not seeking to "sell" a good or a service to Plaintiff. Defendant is offering to "buy" a service from Plaintiff. This result fully comports with the Sixth Circuit's holding in *Sandusky*. Indeed, *Sandusky* recognized that "to be an ad, the fax must **promote** goods or **services to be bought** or sold, and it should have profit as an aim." (emphasis added). The fax promotes services to be bought (survey-takers), and Plaintiff alleges that Defendant sells the data gleaned from this survey to its clients (Dkt. 1, ¶¶ 11-13). Thus, Defendant sent the fax with "profit as an aim." *Lyngaas* citing *Sandusky Wellness Ctr. v. Medco Health Solutions, Inc.*, 788 F.3d at 221-22.

The *Lyngaas* analysis is directly on point here.  Defendant promoted services to be bought from Plaintiffs through the facsimiles sent to Plaintiffs. These facsimiles sent by Defendant were unsolicited and unwanted by Plaintiffs. *Complaint* ¶¶ 20, 31. Plaintiffs are informed and believe these surveys are used by Defendant to profit. Thus, the facsimiles sent to Plaintiffs are advertisements pursuant to *Lyngaas* and *Sandusky*. Furthermore, *Sandusky* indisputably held that the concept of an "advertisement" under the TCPA includes not only a fax *offering* a service to the recipient, but also a fax *desiring* a service from the recipient. Under *Sandusky*, a fax may qualify as a TCPA advertisement not only if it promotes a service to be sold to and bought by the recipient, but also if it promotes a service to be bought

8

from and sold by the recipient.[2]

Defendant also relies heavily on the *Mauthe* case in the United States District Court, Eastern District of Pennsylvania. *Mauthe v. Optum, Inc.*, 2018 U.S. Dist. LEXIS 125796 (E.D.P.A, July 27, 2018). However, *Mauthe*'s facts are distinguishable from the instant action. *See id.* generally. Specifically, the defendant in *Mauthe* sent a facsimile to the plaintiff requesting that the plaintiff update its "demographic data." *Id.* The *Mauthe* court found that the facsimile was an "informational message" and not an advertisement under the TCPA. *Id.* The facsimiles in this case differ, because they are not informational; rather they are advertisements because they are offering to pay Plaintiffs in an effort to create a commercial relationship.

Defendant further relies on the *N.B. Industries* case in the Ninth Circuit. *N.B. Industries, Inc. v. Wells Fargo & Co.*, 465 F. App'x 640, 642 (9th Cir. 2012). The facts in *N.B. Industries* can also be easily distinguished from the facts here. The defendant in *N.B. Industries* sent a facsimile to the plaintiff inviting applications for an annual award sponsored by the United States Pan Asian American Chamber of Commerce ("USPAACC") and Wells Fargo Bank. *Id.* In *N.B. Industries*, the

---

[2] Defendant cites *Davis Neurology, P.A. v. BSM DoctorDirectory.com, LLC*, No. 4:16-CV-00682, 2017 WL 1528769 (E.D. Ark. Mar. 20, 2017), for the contrary proposition that a fax offering to pay the recipient to provide a good or service is not an advertisement. *Davis Neurology*, however, has not been cited by any other court, and it is plainly wrong.

Court found that the monetary award offered by the USPAACC and Wells Fargo was not a "commercial benefit." *Id. N.B. Industries* held that the faxed application was at most an "invitation to apply for a benefit (the award) and thus is not an advertisement." *Id.* Here, Defendant's offering payment for services for completing a survey is a "commercial benefit" because Defendant is benefitting from Plaintiffs and class members' completion of a survey by selling this information to third parties. Additionally, anybody who completes Defendant's survey benefits from receiving compensation to complete the commercial relationship between Defendant and the medical professionals to which it seeks to advertise.

Defendant cites to another case in the Ninth Circuit called *Supply Pro Sorbents, LLC v. RingCentral, Inc.*, 743 F. App'x 124, 124 (9th Cir. 2018). *Supply Pro* found that the one-line facsimile sent by the defendant identifying itself was only an "incidental advertisement" and did not "convert the entire communication into an advertisement. *Id.* The facsimile in *Supply Pro* differs from the ones here because Defendant included an actual offer to enter into a contract with Plaintiffs, while the defendant in *Supply Pro* merely introduces its company generally.

**B. Plaintiffs Need Discovery To Completely Respond to Defendant's Argument Regarding Pretext for a Large Advertising Scheme**

Defendant argues that its facsimiles to Plaintiffs are not a pretext to a larger

10

advertising scheme. However, it is near impossible to determine whether the facsimiles were a pretext to a larger advertising scheme without Plaintiffs obtaining information that is solely in Defendant's possession.  Since Defendant made the argument, Plaintiffs looked outside of the complaint to see if there was any information regarding Defendant's advertising campaigns.  Through Defendant's website, Plaintiffs discovered that if Plaintiffs had participated in Defendant's market research survey, as Defendant's fax solicited Plaintiffs to do, the information that he provided would have been passed on to Defendant's clients. www.olsonresearchgroup.com (last visited Feb. 25, 2019). Plaintiffs also discovered that Defendant pays survey respondents, like Plaintiffs, to complete surveys to gather their valuable information and data, then packages and delivers the data, or recommendations based on the data, to its clients for profit. *Id.*

Defendant's website further explains that Defendant maintains a proprietary database of healthcare provider information, and Defendant uses information provided by survey participants to update that database. *Id.* Defendant invites market research survey participants to add their names and contact information to the database. *Id.* Defendant touts the accuracy of the information in its database as the reason that it is able to meet its clients' market research survey needs:

[Olson] does not offer a static panel of [survey] respondents but instead harnesses a proprietary database [of] healthcare provider records. *** …Olson has

specialty validation procedures in place for checking the accuracy of [survey] respondents during the lifecycle of every project using a multi-step process to ensure we are providing our clients with strategically profiled respondents for highly efficient fielding. *Id.* www.olsonresearchgroup.com/contact./

Defendant sent Plaintiffs three facsimiles that advertised Defendant's commercial marketing survey program. *Defendant's Exhibits 1 and 2*. The facsimiles contained Defendant's name and logo. *Id.* The facsimiles stated on their face that they offered Plaintiffs the opportunity to "earn" fair market value compensation for Plaintiffs' time and opinions in completing the surveys. *Id.* The instructions for completing the surveys directed Plaintiffs to visit www.olsononlinesystems.com ("survey webpage") and enter a study number and a password that Defendant had assigned exclusively to Plaintiffs. www.olsononlinesystems.com. Visiting the survey webpage was the sole means by which Plaintiffs could complete the survey. *Id.*

The survey webpage displays Defendant's name, logo, and text that states:

"Welcome to Olson Online[.] The Olson Research Group, Inc. is a full-service marketing research firm, specializing in healthcare, consumer and agricultural research. We offer all phases of qualitative and quantitative research solutions" *Id.* The survey webpage then instructs those who are responding to a current online study to "type the study number below and click submit." *Id.* At the

top of the survey webpage are links to a page that asks users to add their names to Defendant's database, a "help" page and Defendant's privacy policy. *Id.* The bottom of the survey webpage includes a link to Defendant's home website, www.olsonresearchgroup.com ("home website"). *Id.* Under the "contact us" page on Defendant's home website is an FAQ section that includes information on Defendant's market research business, its clients and its proprietary database. *Id.*

The top of Defendant's privacy policy states that Defendant is a full-service marketing research firm and displays a link to its home website. *Id.* The privacy policy informs users that information obtained from survey respondents is "invaluable" to its clients in developing new products and services. *Id.* The policy encourages respondents to contact Defendant to update their contact information because Defendant "want[s] to make sure [it] can contact you again, and that [its] demographic data is up-to-date." *Id.*

Defendant's policy explains that it never uses personally identifiable information to directly market goods or services to respondents, with the caveat that it will indeed use the information to directly market goods and services to respondents "if this possibility has been disclosed at the outset of the research activity and consent has been obtained." *Id.* Since Plaintiffs did not participate in the marketing research survey advertised in the fax at issue, there is no way for Plaintiffs to determine, without the aid of discovery, if this particular survey was a

pretext to obtain Plaintiffs' consent to be bombarded with targeted ads based on their survey responses. *Id.* Without the benefit of written discovery or a deposition, Plaintiffs are uncertain what the use of the information would have been.

## C. Defendant's Faxes were an "advertisement" within the Meaning of the TCPA because They Solicited Plaintiffs' Compliance in Furtherance of Commercial Profits for Defendant

Defendant's faxes were an "advertisement" within the Meaning of the TCPA because Plaintiffs are informed and believe Defendant solicited Plaintiffs' compliance in furtherance of commercial profits for Defendant. A recent appellate case is instructive. In *Carlton*, the court reversed the district court's order granting the defendant's motion to dismiss in a TCPA case involving a fax that offered a free copy of the defendant's e-book, Physicians' Desk Reference ("PDR"). The district court had held that as a matter of law, the fax was not an "advertisement" because it did not offer the PDR "for sale," but rather had offered it for free. Relying on a 2006 FCC Regulation, the Fourth Circuit reversed, holding that it was plausible, if not likely, that the defendant offered the free e-book for a commercial purpose to make money from someone, and thus the plaintiff's allegations sufficed to withstand the defendant's motion to dismiss:

> [R]equiring a fax to propose a specific commercial transaction on its face takes too narrow a view of the concepts of commercial activity and promotion, and

14

ignores the reality of many modern business models. ***
We do know that [defendant] receives money from
pharmaceutical companies whose drugs are listed in the
[PDR]. And nothing in the record suggests that
[defendant] is a charity that distributes free [PDRs]
without hope of financial gain. … [I]t's certainly
plausible that the amount of money it receives turns on
how many copies of the [PDR] it distributes. The free
distribution of the [PDR], then, may not impose a
financial cost on [fax recipient] healthcare providers, but
[defendant] may nevertheless stand to profit when a [fax
recipient] accepts a free copy. *** All told, we think it
entirely plausible that [defendant] distributes the [PDR]
to further its own economic interests.

*Id.* at 468 (emphasis added).

The offering of a free e-book in *Carlton* is analogous to Defendant's offering
of the "opportunity" here for Plaintiffs to "participate" in Defendant's market
research survey program. Neither directly marketed goods or services for sale, or
for sale to the fax recipients, but it is entirely plausible, and could be learned
through discovery, that Defendant here, like the defendant in *Carlton*, solicited
Plaintiffs' participation in the market research survey "to further its own economic
interests." However, Plaintiffs would need more information obtained through
discovery to flush this issue out entirely.

### D. Defendant's Faxes Were Designed To Generate Website Traffic as Part of an Overall Marketing Plan

Defendant's faxes required Plaintiffs to visit Defendant's online survey web

portal to complete the survey. Under a prevailing TCPA case, a fax that simply drives website traffics leads to the inference that the fax had a commercial purpose. *Neurocare Inst. of Cent. Fla., P.A. v. Healthtap, Inc.*, 8 F. Supp. 3d 1362, 1367 (M.D. Fla. 2014); *G.M. Sign, Inc. v. MFG.com, Inc.*, No. 08-C7106, 2009 WL 1137751, at *1 (N.D. Ill. Apr. 24, 2009). In *Neurocare*, the defendant sent a fax that provided information regarding the defendant's website on which doctors answer medical questions posed by the public. *Neurocare Inst. of Centr. Fla.*, 8 F. Supp. 3d at 1367. The court held that plaintiff sufficiently pled that the faxes related to the commercial quality or availability of the defendant's services because the point of the defendant's website was to connect doctors to potential patients. *Id.*

### E. The Court Should not Dismiss, Stay, or Transfer the Case

#### i. The Court Has Discretion not To Follow the First-to-File Rule

"[T]he first to file rule is 'a generally recognized doctrine of federal comity'" under which "a district court [may] decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district." *Apple Inc. v. Psystar Corp.*, 658 F.3d 1150, 1161 (9th Cir. 2011) (quoting *Pacesetter Sys. Inc. v. Medtronic, Inc.*, 678 F.2d 93, 94-95 (9th Cir. 1982)). "[W]hen two cases involving the same parties and issues are filed in two different federal districts, the first-to-file rule permits the second district court to

16

exercise its discretion to transfer, stay or dismiss the second suit in the interests of efficiency and judicial economy." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1156 (9th Cir. 2007) (Ferguson, J., concurring) (citing *Cedars-Sinai Med. Ctr. v. Shalala*, 125 F.3d 765, 769 (9th Cir. 1997)).[3]

The rule "is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration." *Apple Inc.*, 658 F.3d at 1161 (quoting *Pacesetter Sys. Inc.*, 678 F.2d at 95). "The most basic aspect of the first-to-file rule is that it is discretionary …." *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 628 (9th Cir. 1991) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183-84 (1952)); *see Negrete v. Petsmart, Inc.*, 2013 U.S. Dist. LEXIS 129237, at **6-8 (E.D. Cal. Sept. 9, 2013). The party seeking transfer of venue bears the burden of establishing that transfer is warranted and must submit "sufficient information in the record" to facilitate the Court's analysis. *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000) (citations omitted).

Here, in the interests of justice and efficiency, this Court should not transfer, stay or dismiss this case. Defendant argues that since another similar case was filed in the United States District Court, Eastern District of Pennsylvania, *Fischbein v. The Olson Research Group, Inc.*, No. 17-05601 on December 14,

---

[3] *See also Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989).

2017, this case should be transferred to *Fischbein*.  However, this fact alone is not sufficient to transfer, stay, or dismiss the case. Moreover, *Fischbein* is currently stayed pending an appeal before the Third Circuit Court of Appeals in *Mauthe*.  If this case were to be transferred into the *Fischbein* case, the case would not be efficiently resolved and could be in suspension for years.  In addition, the class periods sought here and in *Fischbein* differ, as to the class definitions. Thus, this Court should not dismiss or transfer the case.

### ii. A Stay Will Cause a Significant hardship and Significant Prejudice to Plaintiffs

In determining whether to stay the action, the Court must balance the "possible damage [to Plaintiffs] which may result from the granting of a stay," with "the hardship or inequity which [Defendant] may suffer in being required to go forward." *CMAX, Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962). If there is "even a fair possibility that the stay for which [Defendant] prays will work damage to someone else," then Defendant must show a "clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.,* 299 U.S. 248, 255 (1936). On January 10, 2019, the court in *Lyngaas* denied a motion to stay pending a resolution of a petition before the FCC, Pet. of M3 USA Corp. for Expedited Declaratory Ruling, CG Docket No. 02-278 (filed Mar. 20, 2017).

Defendant's analysis overlooks the hardship and prejudice Plaintiffs would

face during a stay. Here, Plaintiffs would be unfairly disadvantaged by an unknown and indefinite delay in conducting discovery and the litigation. *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("If there is even a fair possibility that the stay will work damage to someone else, the stay may be inappropriate absent a showing by the moving party of hardship or inequity" (quotation marks and alteration omitted)); *SEC v. Loomis*, No. 10-CV-0458-KJM, 2013 WL 4543939, at *2 (E.D. Cal. Aug. 27, 2013) (holding civil plaintiffs have strong interest in speedy resolution of their claims, which weighs against stay). Some documents and evidence including call logs and facsimile information may be under the control of third parties, such as calling vendors, that may have been used by Defendant to send the facsimiles at issue. *See LG Elecs., Inc. v. Eastman Kodak Co.,* 09-cv-344, 2009 WL 1468703, at *3 (S.D. Cal. May 26, 2009).   It is currently unknown, without discovery, whether Defendant sent each of the facsimiles in-house or the nature of its data retention policy. If Defendant has not maintained sufficient records of the calls that they placed to Plaintiffs and the putative class within the last four years, then a prompt subpoena to Defendant's telephone service carrier for Defendant's outgoing call and facsimile records is necessary to preserve that important and relevant data.

While the statute of limitations in TCPA actions is four years, Plaintiffs may struggle to obtain call logs from third party carriers with short-term retention

periods lasting as short as six months. Therefore, obtaining such logs is already burdensome to Plaintiffs. Cellular telephone carriers do not maintain call records indefinitely. S*ee Retention Periods of Major Cellular Service Providers,* U.S. Dep't of Justice (Mar. 2011), *available at* https://cryptome.org/isp-spy/cellular-spy3.pdf (last accessed on Feb. 25, 20197) (showing that call records are retained for 6 months by Cricket and Metro PCS, 1 year by Verizon, 5 years for T-Mobile (2 years for pre-paid), 5 to 7 years for AT&T, and 18 to 24 months by Sprint); *see generally, Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 248 (N.D.Ill. 2014).) For these reasons, Plaintiffs would be severely prejudiced if this action is stayed.

Also, memories of witnesses fade over time, and documents will inevitably become misplaced if a stay is granted. *Richardson v. Verde Energy USA, Inc.,* 2016 U.S. Dist. LEXIS 113738, at *5 (E.D. Penn. Aug. 25, 2016). Employees of Defendant may be fired, transferred, or quit; meanwhile, there is no articulable prejudice to Defendant, which has an obligation to maintain records demonstrating consent. On the other hand, Plaintiffs face the risk of losing access to pertinent records and other related evidence. Given the high risk of prejudice to Plaintiffs and Defendant's inability to demonstrate a "clear case of hardship," a stay in this action is not appropriate. *Landis,* 299 U.S. at 255.

///

## V.  IF THE COURT FINDS THE FACTS WERE NOT SUFFICIENTLY PLED, PLAINTIFFS SHOULD BE GIVEN THE OPPORTUNITY TO AMEND THE COMPLAINT

In granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile.  *Cook, Perkiss & Liehem Inc. v. N. Cal Collection Serv. Inc.,* 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." *Reddy v. Litton Indus., Inc.,* 912 F. 2d 291, 296 (9th Cir. 1990).  Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. *Id.* at 296-97.

Here, the facts show that at a very minimum, Plaintiffs can (assuming they have not adequately done so already) plead claims for violations of the TCPA.  If this Court finds that Plaintiffs' pleading is inadequate, Plaintiffs request leave to amend their claims.  Such circumstances are the norm when it appears that a plaintiff has a viable cause of action, but for one reason or the other, a court finds that such a cause of action was inadequately pled. *Forman v. Davis*, 371 U.S. 178, 182 (1962) (leave to amend shall be freely given); *In re Morris*, 363 F.3d 891, 894

(9th Cir. 2004) (stressing policy favoring amendments, holding that trial court "should be guided by the underlying merits, rather than on technicalities or pleadings").

## VI.  CONCLUSION

Plaintiffs have adequately pled violations of the TCPA regarding unsolicited advertisements sent by facsimile.  Specifically, Plaintiffs have pled that Defendant attempted to solicit a commercial relationship with Plaintiffs by offering to pay Plaintiffs to complete a survey in a facsimile.  Further, though Plaintiffs would need discovery to determine this fact, it is likely that Defendant's offer to Plaintiffs was a pretext for future advertising to third parties and potentially to Plaintiffs.  This case should not be dismissed, transferred, or stayed under the first-filed doctrine. Finally, if the Court finds Plaintiffs' pleadings to be insufficient, Plaintiffs request leave to amend the Complaint to cure any deficiencies.

Respectfully submitted,

**Kazerouni Law Group**

Date: February 25, 2019                By: *_/s/ Ryan L. McBride_*
                                       Ryan L. McBride, Esq.
                                       Attorneys for Plaintiffs